UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
TOURMALINE PARTNERS, LLC         :
                                 :
                                 :
v.                               :   CIV. NO. 3:13CV108 (WWE)
                                 :
NICOLA MONACO                    :
```

**<u>RULING ON PENDING MOTIONS</u>**

Plaintiff brings this action, in six counts, against his former employee Nicola Monaco, alleging violations of the Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. §§35-50 <u>et seq.</u>; and the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§42-110a, <u>et seq.</u>; breach of fiduciary duty and duty of loyalty; breach of contract; an action of replevin, Conn. Gen. Stat. §52-515(c), <u>et seq.</u>; and conversion. [Amend. Compl. Doc. #14 at 11-17]. Plaintiff seeks temporary and permanent injunctive relief, money damages, punitive damages and attorneys' fees.[1] [Doc. #14 at 18].

----

[1]Tourmaline alleges that it has lost revenue of $165,000 due to defendant's actions and has incurred costs of $85,000, arranging for defendant's Canadian Registration and H1-B Visa and permanent resident application. Tourmaline is seeking the return of a company-issued cell phone, computer and phone equipment issued to defendant. [Doc. 70-1, Sweeting Aff. ¶11].

Pending is plaintiff's Motion for Contempt [doc. #47], and Motion for Attorneys' Fees [doc. #56] and defendant's Motion to Withdraw Responses to Requests to Admit. [Doc. #61].

**Factual Background**

Tourmaline, LLC, is a Connecticut limited liability company with a principal place of business in Stamford. [Amend. Compl. Doc. #14 at ¶2; Answ. Doc. #35 at ¶2; Def. D. Conn. L. Civ. R. 56(a)(1) Stat. of undisputed material facts ("Def. 56(a)(1) Stat.") ¶1].

Defendant Nicola Monaco was employed by Tourmaline as Director of Canadian Trading and Business Development. [Def. 56(a)(1) Stat. ¶¶5, 14].  Defendant was primarily responsible for implementing strategies to expand Tourmaline's Canadian clientele and provide Tourmaline and its clients with investment insight and advice on the Canadian marketplace. [Doc. #70-1, Sweeting Aff.¶6].

Defendant entered into a Restrictive Covenant Agreement in Connecticut dated January 15, 2011, at the start of his employment.  [Def. 56(a)(1) Stat. ¶5].

On July 11, 2011, while continuing to work for plaintiff, Monaco signed an Employee Secrecy, Non-competition and Non-solicitation Agreement.  [Def. 56(a)(1) Stat. ¶19].

On or about July 2012, defendant requested that plaintiff permit him to relocate to California and Tourmaline agreed to the request. [Def. 56(a)(1) Stat. ¶23].

On Friday, December 14, 2012, the defendant resigned his employment with the plaintiff via an email. [Def. 56(a)(1) Stat. ¶30]. At the time of his resignation, Monaco was servicing fifteen (15) client accounts, thirteen (13) of which were Canadian clients.  [Def. 56(a)(1) Stat. ¶31].

On Monday, December 17, 2012, the defendant began working for Greenwich Prime, although still living in California. [Def. 56(a)(1) Stat. ¶35].  Greenwich Prime is located in Stamford, Connecticut and the partners of Tourmaline had a prior business relationship with Greenwich Prime, which offers trading services for the asset management industry.  [Def. 56(a)(1) Stat. ¶38].

Plaintiff alleges that at the time of Monaco's "resignation from Tourmaline, Defendant was servicing 15 client accounts, of which 13 were Canadian clients, and which generated substantial income for the Company. Since Defendant's resignation from Tourmaline, the Company has done no business on behalf of and booked no revenue from any of the 15 accounts previously serviced by Defendant."  [Amend. Compl. Doc. #14 at ¶38].

**Procedural Background**

Plaintiff filed this action in Connecticut Superior Court on January 22, 2013. The case was removed to this Court on January 23, 2013, [doc. #1]; defendant's counsel filed an appearance on February 13. [Doc. #8]. After an Amended Complaint was filed on April 15, 2013, [doc. #14], Judge Eginton entered a stay pending settlement negotiations on May 15. [Doc. #20]. After a settlement conference was held on June 25, 2013, the stay was lifted and the parties were directed to engage in discovery. [Doc. #22]. On August 30, and September 4 and 12, 2013, defendant's counsel filed motions to withdraw, all of which were granted. [Doc. #26, 27, 30, 31, 32]. Defendant Nicola Monaco filed a pro se appearance on September 9, 2013. [Doc. #29].

**Default**

On September 18, 2013, plaintiff filed a Motion for Entry of Default for failure to file a responsive pleading, which was granted by Judge Eginton on September 24, 2013, with direction that a Motion for Default Judgment be filed within thirty days. [Doc. ##33, 34].  Defendant filed an Answer on September 26, 2013. [Doc. #35]. Plaintiff did not file a Motion for Default Judgment or a Motion to Strike defendant's answer.

4

**Motion to Dismiss**

Plaintiff filed a Motion to Dismiss defendant's Counterclaims on October 15, 2013, along with a Pro Se Notice pursuant to the D. Conn. L. Civ. R. 12(a). [Doc. ##37, 38]. Judge Eginton granted the Motion on November 20, 2013, on the merits and absent objection. [Doc. #42].

**First Set of Interrogatories and Requests for Production dated November 6, 2013**

On November 6, 2013, plaintiff served defendant with its First Set of Interrogatories and Requests for Production.

On November 27, 2013, plaintiff sought an extension of the December 1, 2013, discovery deadline, stating it was "necessary as plaintiff has outstanding discovery requests to which defendant has yet to respond." [Doc. #43]. Judge Eginton extended the discovery deadline to January 3, 2014. [Doc. #44].

On December 10, 2013, plaintiff sent a letter to defendant at two California addresses, the one in Beverly Hills that was provided in defendant's pro se appearance [doc. #29], and another located in Los Angeles. The letter sought discovery responses, to plaintiff's First Set of Interrogatories and Requests for

Production dated November 6, 2013, by December 20.[2] [Doc. #57, Ex. C].

On December 24, plaintiff filed a Motion to Compel Discovery Reponses for defendant's "failure to provide responses to plaintiff's First Set of Interrogatories and Request for Production." [Doc. #45]. On or about December 30, plaintiff received a letter[3] and a telephone call from Mr. Monaco, informing plaintiff that he needed more time to respond to plaintiff's discovery requests. [Doc. #57 at 8, Ex. E]. Plaintiff informed defendant that a Motion to Compel was pending. Defendant acknowledged he was aware of the Motion to Compel. [Doc. #57 at 9]. Plaintiff also informed defendant that he needed to respond to the Motion to Compel and seek an extension of time from the Court to respond to the outstanding discovery requests.   The Motion to Compel was granted absent objection on January 15, 2014. [Doc. #46].

On January 20, 2014, plaintiff sent a letter to defendant informing him that the Motion to Compel had been granted and that defendant's "discovery responses must be served within 14 days of today's date, January 20, 2014." [Doc. #57, Ex. A].

---

[2] At oral argument on April 14, 2014, defendant confirmed that he received correspondence at the Los Angeles address. [Tr. at 4].

[3] Defendant wrote, "Given the number of questions and detail required, will need more time to answer[]!" [Doc. #57, Ex. E].

On February 10, 2014, plaintiff filed the pending Motion for Contempt pursuant to Fed. R. Civ. P. 37(b)(2), seeking sanctions against defendant for his failure to comply with the Court's order compelling discovery. [Doc. #47]. Plaintiff seeks an order striking defendant's pleadings in whole or in part and entry of a default judgment. In the alternative, plaintiff seeks an order prohibiting defendant from supporting or opposing any claims and defenses or from introducing evidence regarding any discovery plaintiff requested. Last, plaintiff seeks an award of reasonable attorneys' fees and costs incurred due to defendant's failure to comply with the Court's order on the Motion to Compel. [Doc. ##47, 56].

The Motion for Contempt was referred by Judge Eginton on April 3, 2014. [Doc. #51]. The next day, the Court set April 14 for oral argument, with an Order requiring plaintiff to provide proof at the hearing that defendant Monaco was served with the Motion for Contempt and a copy of the calendar for oral argument.[4] [Doc. ##52 53]. A docket entry also reflects that the Court calendar was mailed to defendant at his Los Angeles address on April 4, 2014. Oral argument was held on April 14, 2014, with defendant appearing by telephone. He explained that he was unable

_____

[4] Plaintiff's tracking receipt indicated the motion and calendar were delivered to the defendant's address on April 8, 2014 at 10:12AM. [Doc. #78, Transcript of April 14, Oral Argument, ("Tr."), at 4].

7

to appear in person because he was traveling, did not return home until Friday, April 11, and did not discover the Court's mailing or the UPS parcel from plaintiff's counsel until Saturday, April 12, when he found the mail in the yard.  "We have two German Shepherds, and UPS cannot come to the door because Shepherds are always outside." [Tr. 4-5; Doc. #55].

During the hearing, Monaco apologized to the Court and sought leave to "address in a prompt manner the discovery items that are needed by the plaintiff. I promise to cooperate fully on board in this matter in a very prompt and efficient way." [Tr. at 5]. When asked to provide an explanation for his failure to comply with the Court's order sooner, defendant responded,

> I have been overwhelmed with documentation from the plaintiff, and not knowing the legal system, I did respond once to a letter with words having to do with deny or not deny. I answered it, and then it came back as not the proper way to be answered.
>
> . . . .
>
> Basically I resigned from this firm, and so I moved on. And in the U5 that they filed with FINRA, they said that they permitted me to resign. That's been filed with FINRA.[5]

─────────────

[5] "FINRA" is the Financial Industry Regulatory Authority. Uniform Applications for Broker-Dealer Registration (Forms U4) and Uniform Termination Notices for Security Industry Registration (Forms U5). "These filings are how individuals begin and end their registered relationship with FINRA and they are essential for FINRA's ability to perform its regulatory oversight responsibilities." See

. . . .

I was hoping some sort of mediation could come about. . . . And I have been going back and forth in my head, am I really guilty of anything? Have I done anything wrong? I was overwhelmed with the paperwork. I should have been more sensitive to all the details. I should have answered all the questions that they asked me. There were so many. I think it was 35-40 pages.[6]  It was just a matter of being overwhelmed and not having given the attention that it deserved to the lawsuit.

THE COURT: Well, you understood, Mr. Monaco, that when your lawyers withdrew in September of 2013, and you entered a pro se appearance, that required you to be familiar with the rules of the Court and to comply with orders just like a lawyer would have to if there were still lawyers representing you. And so, you know, we're beyond the issue of the discovery responses, although I'm going to ask Mr. Sweeting shortly, you know, what relief he's specifically seeking; but there's been a motion to dismiss, which was granted in the absence of any response. Then there was the motion to compel, which was granted by Judge Eginton in the absence of any response; and now there's this motion for contempt, and, you know, the plaintiffs are seeking sanctions against you. So it's more than simply you need to comply. Right now, there are a number of things that they could ask for, including the dismissal of the case. So we're at a really serious juncture here, and you need to listen up to Mr. Sweeting and then respond to whatever it is that he's going to request because you've dug yourself a really deep hole here, Mr. Monaco, by not responding sooner.

[Tr. 5-8].

---

http://www.finra.org/web/groups/industry/@ip/@edu/documents/education/p018907.pdf
[6] Plaintiff's First Set of Interrogatories and Requests for Production of Documents dated November 6, 2013, is twenty pages. The instructions are at pages 1-9.  There are twenty-five interrogatories at pages 9-17, and twelve requests for production at pages 17-20.

Plaintiff sought a court order striking defendant's answer, entry of default and an award of attorneys' fees and costs.

At the conclusion of the hearing, the Court reserved decision on the Motion for Contempt and entered an abbreviated schedule for defendant Monaco to provide all outstanding discovery responses by Monday, April 21, 2014.  Plaintiff was directed to file a Motion for Attorney's Fees and Costs with supporting documentation by Monday April 21, 2014. See Doc. #54.

Plaintiff filed a Motion for Attorneys' Fees and Costs on April 21, followed by a Supplemental request for fees on May 5, 2014. [Doc. ##56, 57, 70].

Defendant provided responses to plaintiff's outstanding discovery requests on April 17, 2014. [Doc. #57, Ex.B].

On April 23, 2014, plaintiff filed a Supplemental Memorandum in Support of its Motion for Contempt stating, among other things, that

> On April 17, 2014, Plaintiff received a delivery from Defendant via UPS overnight carrier consisting of a five page response to all discovery requests. A copy of Defendant's discovery responses to Plaintiff is annexed hereto as Exhibit "B." Upon inspection of Defendant's responses, Defendant fails to provide answers to ten of Plaintiff's twenty-five interrogatories. Furthermore, Defendant lists a litany of objections well beyond the appropriate time to file objections, and in many other responses,

> Defendant merely states that he does not recall
> any information.  Most egregiously, Defendant
> fails to provide even one page in response to
> Plaintiff's twelve document requests.

[Doc. #57 at 4]. In response to the Interrogatories,[7]

defendant failed to provide answers to ten of twenty-

five interrogatories, objected well beyond the

appropriate time to file objections and contended he

cannot recall information requested. Defendant objected

to eleven of the twelve document requests and produced

no documents in response to requests for production.[8]

[Doc. #57 at 9].

---

[7] Defendant objected to ten of twenty-five Interrogatories, Nos.
2, 5-9, 13-14, 22 and 24, and stated he could not recall the
information requested in Interrogatories 10 and 11. [Doc. #57,
Ex. B]. In response to Interrogatory No. 25, defendant stated
that he "had no assistance in the preparation of the answers [to]
the Interrogatories." [Doc. #57, Ex. B].

[8] Defendant responded to the Requests for Production as follows:

> Defendant objects to Request[s] [Nos. 1, 3-5, 7,
> and 12], as it is overbroad, unduly burdensome,
> overreaching, requires it to conduct research
> and/or investigations or to acquire information
> not presently within its possession. In addition,
> the Request places an undue burden upon the
> Defendant and/or calls for the production of
> confidential information in the absence of a
> Protective Order. Moreover, Request [Nos. 1, 3-5,
> 7 and 12 are] not reasonably calculated to lead to
> the discovery of admissible evidence.
>
> Defendant objects to Request[s][Nos. 2, 6, 8-10]
> as it is overbroad, unduly burdensome,
> overreaching, requires it to conduct research
> and/or investigations or to acquire information
> not presently within its possession. Moreover,

Discovery closed on January 3, 2014. [Doc. #44].

1. **Motion for Contempt [Doc. #47]**

Plaintiff seeks sanctions in the form of striking defendant's pleadings, entry of a default judgment and attorney's fees pursuant to Fed. R. Civ. P. 37 for defendant's willful violation of discovery orders, "or at the very least, prohibit and preclude defendant from supporting or opposing any claims or defenses or from introducing any matters into evidence which defendant has failed to produce to plaintiff." [Doc. #47 at 6].

**Standard**

Federal Rule of Civil Procedure 37 "provides a non-exclusive list of sanctions that may be imposed on a party for failing to obey an order to provide or permit discovery." Martinelli v. Bridgeport Roman Catholic Diocesan Corp., 179 F.R.D. 77, 80 (D.

---

> Request [Nos. 2, 6, 8-10 are] not reasonably calculated to lead to the discovery of admissible evidence.
>
> Request for Production No. 11: Copies of Defendant's 2011 and 2012 federal and state income tax returns, redacted to show only Defendant's sources of earned income during the time period of Defendant's affiliation and/or employment by Plaintiff.
>
> Response: Defendant's income for 2011 and 2011 are equal to income earned while at the employment of the Plaintiff during 2011 and 2012.

[Doc. #57 Ex. B]. Defendant produced no documents.

Conn. 1998) (citing <u>Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.</u>, 930 F.2d 1021, 1027 (2d Cir. 1991) Fed. R. Civ. P. 37(b)(2)(A)(i)-(vii). "Provided that there is a clearly articulated order of the court requiring specified discovery, the district court has the authority to impose Rule 37(b) sanctions for noncompliance with that order." <u>Daval Steel Products, a Div. of Francosteel Corp. v. M/V Fakredine</u>, 951 F.2d 1357, 1363 (2d Cir. 1991) (citation omitted).  "The imposition of sanctions under Rule 37 is within the discretion of the district court and the decision to dismiss an action for failure to comply with discovery orders will only be reversed if the decision constitutes an abuse of that discretion." <u>John B. Hull, Inc. v. Waterbury Petroleum Products, Inc.</u>, 845 F.2d 1172, 1176 (2d Cir. 1988) (citation omitted).

> Numerous factors are relevant to a district court's exercise of its broad discretion to order sanctions under Rule 37, including: (1) the willfulness of the non-compliant party or the reason for the noncompliance; (2) the efficacy of lesser sanctions; (3) the prejudice to the other party; (4) the duration of the period of noncompliance, and (5) whether the non-compliant party had been warned of the consequences of his non-compliance. In addition, an award of sanctions under Rule 37 should effectuate its three purposes: (1) ensuring the disobedient party does not benefit from non-compliance; (2) obtaining compliance with discovery orders; and (3) providing a general deterrent in the particular case and litigation in general.

Handwerker v. AT&T Corp., 211 F.R.D. 203, 208 (2d Cir. 2002)
(citations omitted); Morales v. Cancun Charlie's Restaurant,
Civil Action No. 3:07-cv-1836 (CFD), 2009 WL 3682449, at *5 (D.
Conn. Oct. 30, 2009) (citing Hanwerker).

One possible sanction is entry of default judgment against
the disobedient party. Fed. R. Civ. P. 37(b)(2)(A)(vi).  Default
judgment is proper if there is a showing of "willfulness, bad
faith, or fault" on the part of the sanctioned party.  Agiwal v.
Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009)
("dismissal with prejudice is a harsh remedy to be used only when
the court finds willfulness, bad faith, or any fault by the non-
compliant litigant.") (citation omitted). Our Court of Appeals
has "expressed a preference that litigation disputes be resolved
on the merits, and not by default," and "also consistently
recognized that Rule 37 sanctions are applicable in extreme
circumstances, where a party fails to comply with the court's
discovery orders willfully, in bad faith, or through fault."
S.E.C. v. Setteducate, 419 Fed. Appx. 23, 24 (2d Cir. 2011)
(citations and quotation marks omitted).  A district court's
imposition of sanctions under Rule 37, including dismissal, is
reviewed for an abuse of discretion. Agiwal, 555 F.3d at 302.

"The mildest sanction is the reimbursement of expenses to
the opposing party for failing to obey an order to provide or

permit discovery, while the harshest sanction is the order of dismissal and default judgment." Martinelli, 179 F.R.D. at 80 (citing Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp., 602 F.2d 1062, 1066 (2d Cir. 1979)). "While a showing of willful disobedience or gross negligence is required to impose a harsher sanction, a finding of willfulness or contumacious conduct is not necessary to support sanctions which are less severe than dismissal or entry of default judgment." Id. 179 F.R.D. at 80; see 7 James Wm. Moore, Moore's Federal Practice ¶37.50[2][b] (3d ed. 2014).

The Court may also impose "other appropriate sanctions" including "attorney's fees caused by the failure." Fed. R. Civ. P. 37(b)(2)(C), (c)(1)(A).

"The pro se status of a non-compliant litigant does not relieve [him] of any discovery obligations." Handwerker, 211 F.R.D. at 208 (citing Minotti v. Lensink, 895 F.2d 100, 103 (2d Cir. 1990) ("[A]ll litigants, including pro ses, have an obligation to comply with court orders.")(internal quotation marks and citations omitted)); Agiwal, 555 F.3d at 302 (same). "Rule 37 sanctions may be imposed even against a plaintiff who is proceeding pro se, so long as a warning has been given that noncompliance can result in a sanction." S.E.C., 419 Fed. Appx. at 24 (citation and internal quotation marks omitted); "While pro

se litigants have no right to ignore or violate court orders, they must nonetheless be made aware of the possible consequences of their actions." Id. (citing Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 766 (2d Cir. 1990) (holding that, before the district court could impose a dismissal sanction against a pro se litigant for failure to appear at deposition and walking out of a pre-trial conference, it should have informed her that violation of a court order would result in dismissal of her case with prejudice)).

**Willfulness and Reason for Non-Compliance**

"Non-compliance may be deemed willful when the court's orders have been clear, when the party has understood them, and when the party's non-compliance is not due to factors beyond the party's control."  Handwerker, 211 F.R.D. at 209 (citing Bambu Sales, Inc. v. Ozak Trading Inc., 58 F.3d 761, 852-53 (2d Cir. 1995); see also, Abreu v. City of New York, 208 F.R.D. 526, 530 (S.D.N.Y. 2002); Morales, 2009 WL 3682449, at *5.  A "party's persistent refusal to comply with a discovery order presents sufficient evidence of willfulness, bad faith or fault." Handwerker, 211 F.R.D. at 209.

As set forth above, Monaco failed to heed scheduling deadlines, responsive pleading deadlines and the Court's orders on numerous occasions. After failing to respond to plaintiff's

motion for default, defendant filed an answer to the Amended Complaint dated April 15, 2013, on September 26, 2013, only after the Court granted plaintiff's motion for default.  Thereafter, defendant missed every scheduled deadline, did not file responsive pleadings to the Motion to Dismiss, Motion to Compel or the Motion for Contempt and failed to comply with the Court's order to produce discovery, thus delaying the case until April 14, 2014, when he appeared by telephone for a hearing on the Motion for Contempt.

Monaco argues that a default judgment in unwarranted in light of his eleventh-hour compliance, that is, his late and incomplete response to discovery, his proffered apologies and his hiring of new counsel.[9]  Moreover, defendant argues that his conduct does not rise to the level of "bad behavior;" rather, he contends that his actions were "due simply to his inability to comprehend the Federal Rules of [Civil] Procedure and the local rules of this Court," "i.e. excusable neglect." [Doc. #77 at 2]. See Cine Forty-Second St. Theatre Corp., 602 F.2d at 1066 (negligent wrongs are fit subjects for general deterrence).

---

[9] Specifically, defendant argues that he "has been openly apologetic to the Plaintiff and to the Court on April 14, 2014 and again in his sworn affidavit. He has hired new counsel and has made every conceivable attempt to get this case back on track."  [Doc. #77 at 2].

The Court finds on the current record that, although plaintiff has expended a great deal of time and effort, a lesser sanction than default judgment is warranted. Simply put, once defendant was on notice that a failure to comply would result in dismissal, he produced discovery responses and hired new counsel. "There is no exception to honoring and respecting discovery orders. All litigants and litigators, including pro ses, must comply and when they flout their obligation, they must suffer the consequences of such action." LeGrande v. Adecco, 233 F.R.D. 253, 257 (N.D.N.Y. July 13, 2005) (citations omitted). Here, the Court permitted an abbreviated period for Monaco to provide discovery responses.  That said, the Court is unwilling to reopen discovery, reconsider rulings on the Motion to Dismiss or the Motion to Compel or tolerate any further delay occasioned by defendant's litigation strategy.   The Court finds that an award of attorneys' fees and costs is a less drastic sanction and will substantially achieve the desired deterrent effect. The Court further finds that defendant is limited to the discovery responses provided, any objections to plaintiff's discovery requests are waived, and defendant is precluded from offering a defense based on any discovery materials that have not been provided to date.

Accordingly, plaintiff's Motion for Contempt, construed as a Motion for Sanctions under Fed. R. Civ. P. 37, **[Doc. #47]** is **GRANTED**.

## 2. Motion for Attorneys' Fees and Costs [Doc. #56].

The Court concludes that Plaintiff's request for an award of $11,437.50 in fees and costs should be granted. The Second Circuit has held that when determining the amount of compensatory sanctions to be awarded, "due process requires, at a minimum, that: (1) the party seeking to be compensated provide competent evidence, such as a sworn affidavit, of its claimed attorney's fees and expenses; and (2) the party facing sanctions have an opportunity to challenge the accuracy of such submissions and the reasonableness of the requested fees and expenses." Mackler Productions, Inc. v. Cohen, 225 F.3d 136, 146 (2d Cir. 2000) (citations omitted). In this case, both requirements have been satisfied. Plaintiffs' counsel, Russell J. Sweeting, has submitted sworn affidavits to the Court, with supporting documentation, asserting that plaintiff has incurred $11,437.50 in fees and costs in the amount of $112.64 in an effort to obtain discovery responses from defendant and his compliance with the Court's orders, and asserting that the fees and costs incurred for professional services and expenses as itemized in Exhibit A totaling $11,550.14 are fair and reasonable. [Doc. #56-1, Ex A; 70-1, Sweeting Aff. ¶¶14-16, Ex. A].  Defendant was provided an

opportunity to oppose plaintiff's motion after counsel appeared on his behalf. [Doc. ##69, 71, 78].

Defendant argues that an award of attorneys' fees and costs is not warranted because plaintiff has not shown that defendant "acted in bad faith, vexatiously, wantonly or for oppressive reasons." [Doc. #78 at 3-4]. Defendant argues that, while he "candidly admits he did not follow the rules of the Court . . . his excusable neglect is not founded in bad faith, oppression or other willful behavior." Id. at 4. The Court disagrees for the reasons already stated.

Courts in this circuit have often awarded attorneys' fees to sanction a party who disregards his discovery obligations. See Interscope Records v. Barbosa, No. 05 Civ. 5864, 2007 WL 14332, at *3 (E.D.N.Y. Jan. 3, 2007) (awarding attorneys' fees under Rule 37(c)(1) and the Court's inherent powers for providing false and misleading discovery responses); LeGrande, 233 F.R.D. at 258 (awarding deposition costs under Rule 37(c)(1) and the Court's inherent power after concluding there was no justification for pro se plaintiff's "laissez-faire compliance with discovery"); Brick v. HSBC Bank USA, No. 04-CV- 0129E, 2004 WL 1811430, at *6 (W.D.N.Y. Aug. 11, 2004) (awarding attorneys' fees and expenses in the amount of $147,635.74 under the Court's inherent powers for evasive and incomplete disclosure); Nike,

20

Inc. v. Top Brand Co. Ltd., 216 F.R.D. 259 (S.D.N.Y. 2003)
(awarding reasonable attorneys' fees as a sanction for discovery
abuses); Monaghan v. SZS 33 Assocs., L.P., 154 F.R.D. 78, 86
(S.D.N.Y. 1994) (awarding plaintiff attorneys' fees under Rule
37(c)(1) for defendant's negligent discovery abuses). Such an
award is considered the mildest form of sanction under Rule 37.
See Cine Forty-Second Street Theatre Corp., 602 F.2d at 1066;
LeGrande, 233 F.R.D. at 256 n. 1 ("There is a spectrum of
sanctions ranging from the mildest of reimbursing for expenses to
the harshest, order of dismissal or default."). "This Court
requires a finding of bad faith when attorneys' fees are assessed
for conduct of the sort that is normally part of the attorney's
legitimate efforts at zealous advocacy for the client, but does
not require a finding of bad faith to sanction violations of
court orders or other conduct which interferes with the court's
power to manage its calendar and the courtroom." Brick, 2004 WL
1811430, *3 (internal quotation marks and citations omitted).

The Court has independently examined Plaintiff's request and
concluded that it is reasonable under the circumstances. As set
forth above, defendant's litigation choices with respect to his
representation and failure to file responses to motions or to
follow the Court's orders required plaintiff to file numerous
motions and attend a hearing before this Court. It is thus

unsurprising that thirty and one half hours of time were spent by Tourmaline's counsel in an effort to obtain defendant's compliance with discovery orders and filing deadlines. The hourly rate of $375 requested by Attorneys Thomas Moyher and Russell Sweeting appears reasonable, given their experience.[10] The Court has carefully reviewed the request for costs in the amount of $112.64 and find it reasonable. Thus, the Court awards plaintiff $11,550.14 in attorney's fees and costs. See Fustok v. ContiCommodity Services, Inc., 873 F.2d 38, 40 (2d Cir. 1989) (holding that a hearing was not necessary to determine the propriety of a request for attorney's fees in light of the record before the district court and the district court's experience with the case).

Accordingly, plaintiff's Motion for Attorneys' Fees and Costs **[Doc. #56]** is **GRANTED** in the amount of $11,437.50 in attorneys' fees and $112.64 in costs, totaling $11,550.14.

### 3. Motion to Withdraw Responses to Requests to Admit [Doc. #61]

On November 27, 2013, plaintiff served defendant with Requests for Admission. Defendant's response was postmarked February 4, 2014, and received on February 7, 2014, well beyond the thirty day time limitation for responses. Fed. R. Civ. P.

---

[10] Defendant did not challenge the number of hours expended or the hourly rate charged by the attorneys.

36(a)(3) ("A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney. A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court.").

On April 30, 2014, the defendant, by that time represented by counsel, filed a Motion for Extension of Time until February 7, 2014, nunc pro tunc, to serve responses to Requests for Admission. Defendant stated that, "[t]he instant motion merely seeks to make the proper, although belated, motion for extension of time up to February 7, 2014. [Doc. #60 at 1]. Defendant's counsel argued that plaintiff should not benefit "by a technicality that Mr. Monaco, a non-lawyer, failed to understand that time limit of Rule 36." Id. at 2. The motion was granted by Judge Eginton on May 14, 2014. [Doc. 73].

Plaintiff first argues that the requests should be deemed admitted. It contends that, "[o]ver this three month period, Plaintiff began to prepare for trial under the proper legal theory that such requests for admission were deemed admitted under Fed. R. Civ. P. 36(a)." [Doc. #75-1 at 3]. The undersigned will not reconsider Judge Eginton's ruling permitting the belated filing of the February 7, 2014, responses.

On April 30, 2014, defendant also filed the pending Motion to Withdraw his February 7, 2014, Responses to Requests for Admission Pursuant to Fed. R. Civ. P. 36(b), [doc. #61], seeking to withdraw and amend the late-filed responses.  For the reasons that follow, defendant's motion is denied.

Rule 36(b) permits the admission to be withdrawn or amended when (1) "it would promote the presentation of the merits of the action" and (2) "if the court is not persuaded that it would prejudice the requesting party in maintaining or defending the action on the merits." Fed. R. Civ. P. 36(b).

> Consequently, the court must apply a two-part test
> in making its determination whether to grant or
> deny a request for amendment, withdrawal, or late
> response: (1) the presentation of the merits must
> be promoted by allowing the amendment, withdrawal,
> or late response, and (2) the party that obtained
> the admission must not be prejudiced in
> maintaining or defending the action on the merits
> if the amendment, withdrawal, or late response is
> permitted.

7 James Wm. Moore <u>Moore's Federal Practice</u>  §36.13 (3d ed. 2014). "Even when these two factors are established, a district court still has discretion to deny a request for leave to withdraw or amend an admission."  <u>Carney v. IRS</u>, 258 F.3d 415, 419 (5th Cir. 2001); <u>Donovan v. Carls Drug Co.</u>, 703 F.2d 650, 652 (2d Cir. 1983) ("Because the language of [Rule 36(b)]is permissive, the court is not required to make an exception to Rule 36 even if both the merits and the prejudice issue cut in favor of the party

seeking exception to the rule.")   "Under Rule 36(b), the decision to excuse the defendant from its admissions is in the court's discretion."   <u>Donovan</u>, 703 F.2d at 652.

"The first prong of the test for determining whether to allow admission to be amended is satisfied when upholding the admission would practically eliminate any presentation on the merits of the action."  7 <u>Moore's Federal Practice</u> §36.13 ("The party moving for the amendment . . . must convince the court that permitting the amendment, withdrawal, or late response will promote the presentation of the merits of the action."); <u>Westmoreland v. Triumph Motorcycle Corp.</u>, 71 F.R.D. 192 (D. Conn. 1976) (Blumenfeld, J) ("The first half of the test is clearly satisfied since the effect of upholding the admissions would be to practically eliminate any presentation of the merits."). Here, defendant denied twenty-one of thirty-two requests. All of the facts admitted in the responses are also listed as undisputed facts in defendant's Local Rule 56(a)(1) Statement, submitted with his Motion for Summary Judgment.[11] [Doc. #90-1]. Monaco did

---

[11] For example, in requests 1 and 2, defendant admitted he was employed by Tourmaline as Director of Canadian Trading and Business Development.  <u>See</u> Def. 56(a)(1) Stat. ¶¶3,14. In request 8, defendant admitted he entered into a Restrictive Covenant Agreement with Tourmaline on or about January 15, 2011.  <u>See</u> Def. 56(a)(1) Stat. ¶16.   In requests 9 and 10, he admitted he entered into an Employee Secrecy, Non-Competition and Non-Solicitation Agreement on or about July 11, 2011, and agreed that during his employment with plaintiff or thereafter, he would not disclose to

not address specific responses in his motion or explain how a particular admission would eliminate the presentation of the merits of the case.  On this record, defendant has not satisfied his burden of proof on the first prong since the effect of upholding the February 7, 2014, admissions does not eliminate the presentation of the merits of the case.

"The party who obtained the admission must show the court that it will be prejudiced if the amendment or withdrawal is allowed."  7 Moore's Federal Practice §36.3.  Defendant argues that plaintiff cannot demonstrate prejudice. He argues that the parties have not taken fact or expert depositions and discovery has closed; plaintiff has not moved for summary judgment so it has not relied on the default admissions or on the responses to admissions dated February 7, 2014; and Judge Eginton has not scheduled trial or jury selection; thus there is no prejudice regarding trial preparation. [Doc. #62 at 3].

---

others any confidential information he obtained through his employment. See Def. 56(a)(1) Stat. ¶19.  In request 16, defendant agreed that during the course of his employment, plaintiff reimbursed defendant for the purchase price of his Samsung Galaxy S III cell phone. See Def. 56(a)(1) Stat. ¶21. In requests 19 and 20, defendant admitted that on or about July 2012, defendant requested that plaintiff permit him to relocate to California and Tourmaline agreed to the request.  See Def. 56(a)(1) Stat. ¶23. In request 26, defendant admitted that on or about Friday, December 14, 2012, he resigned his employment with Tourmaline. See Def. 56(a)(1) Stat. ¶30.  Finally, in response 30, defendant admitted that at the time of his resignation he was servicing fifteen (15) client accounts, thirteen (13) of which were Canadian clients. See Def. 56(a)(1) Stat. ¶32.

"Plaintiff, based upon the legal presumption that all Requests for Admission were granted, chose not to take depositions of certain witnesses and promulgated a litigation strategy based upon this legal presumption." [Doc. #71-1 at 4]. Tourmaline states that if the Court permits defendant to withdraw the admissions, it would be required to alter its litigation strategy, incur additional expenses for depositions, seek an extension of time to conduct discovery and incur expenses in an attempt "to locate evidence on each and every item which legally defendant is presumed to have admitted." The Court finds on this record that plaintiff would be further prejudiced if defendant is permitted to withdraw the February 7, 2014, admissions and amend his responses. See Moosman v. Joseph P. Blitz, Inc., 358 F.2d 686, 688 (2d Cir. 1966) ("Under compelling circumstances the District Court may allow untimely replies to avoid the admission.").

**CONCLUSION**

Accordingly, plaintiff's Motion for Contempt **[Doc. #47]**, construed as a Motion for Sanctions under Fed. R. Civ. P. 37 is **GRANTED**. Plaintiff's Motion for Attorney's Fees **[Doc. #56]** is **GRANTED** in the amount of **$11,550.14**.

Defendant's Motion to Withdraw Responses to Requests for Admission Pursuant to Rule 36(b) **[Doc. #61]** is **DENIED**.

This is not a recommended ruling. This is a discovery ruling and ruling on a motion for attorney's fees which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at Bridgeport this 23th day of September 2014.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE